UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISTRICT COUNCIL 16 NORTHERN CALIFORNIA HEALTH AND WELFARE TRUST FUND,<br><br>Plaintiff,<br><br>v.<br><br>SUTTER HEALTH, et al.,<br><br>Defendants. | Case No. 15-cv-00735-TEH<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** |

This matter is before the Court on Plaintiff's motion to remand. The Court has carefully considered the arguments of the parties in the papers submitted, and finds this matter suitable for resolution without oral argument, pursuant to Civil Local Rule 7-1(b). Plaintiff's motion to remand is hereby GRANTED, for the reasons set forth below.

**BACKGROUND**

Plaintiff is a health and welfare trust fund responsible for the payment of medical expenses incurred by members of its ERISA-regulated benefit plan. Compl. ¶¶ 42-43 (Docket No. 1). Defendants are a non-profit network of hospitals, physicians, and other medical providers. Opp'n at 2 (Docket No. 19). On January 6, 2015, Plaintiff filed suit against Defendants in Alameda County Superior Court on behalf of itself and all self-funded benefit plans that paid Defendants for anesthesia services that were allegedly (1) not provided, (2) separately billed by a third-party anesthesiologist, or (3) reimbursed through other charges on the hospitals' bills. Compl. ¶ 1. Plaintiff claims that these actions constituted a violation of California's Unfair Competition Law ("UCL"), codified as Business and Professions Code §§ 7200, *et seq. Id.*

Defendants timely removed this action to federal court on the basis that Plaintiff's claims are completely preempted by the Employment Retirement Income Security Act of 1974 ("ERISA"). Notice of Removal (Docket No. 1). On March 19, 2015, Plaintiff filed

the present motion to remand. (Docket No. 18). Defendants filed a timely opposition and Plaintiff replied. (Docket Nos. 19, 20).

**LEGAL STANDARD**

When a case "of which the district courts of the United States have original jurisdiction" is initially brought in state court, a defendant may remove it to federal court under 28 U.S.C. § 1441(a). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The party invoking the federal court's removal jurisdiction has the burden of establishing federal jurisdiction. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (*citing Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)). To protect the jurisdiction of state courts, removal jurisdiction is strictly construed in favor of remand. *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689 (9th Cir. 2005). Any doubt as to the right of removal must be resolved in favor of remand to state court. *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992).

**DISCUSSION**

In enacting ERISA, Congress set out to "protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). To further ERISA's purpose to "provide a uniform regulatory regime over employee benefit plans . . . ERISA includes expansive pre-emption provisions that are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Aetna Health v. Davila*, 542 U.S. 200, 208 (2004) (citations omitted). Specifically, ERISA's "comprehensive legislative scheme" includes "an integrated system of procedures for

2

enforcement" under ERISA Section 502(a), codified as 29 U.S.C. § 1132(a). *Id.* at 208. "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 209.

## I.   Complete Preemption

Importantly, the law distinguishes between partial and complete preemption under ERISA. Ordinarily, federal preemption is merely an affirmative defense to the enforcement of state law claims, displacing state law but not providing federal question jurisdiction. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1973). ERISA offers this type of partial preemption in § 514(a), which displaces state laws that "relate to" ERISA-regulated employee benefit plans. ERISA § 514(a). Importantly, however, § 514(a) does not confer federal jurisdiction and is therefore not a basis for removal. *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009).

Conversely, ERISA § 502(a) provides for the complete preemption of certain claims that fall within the scope of ERISA's remedial scheme. *Id.* Unlike conflict preemption, complete preemption is "really a jurisdictional rather than a preemption doctrine, [as it] confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008). In *Metropolitan Life Insurance Co.*, the Supreme Court articulated the nature of complete preemption under § 502(a), explaining that Congress intended to "so completely pre-empt" this particular area of law, "that any civil complaint raising this select group of claims is necessarily federal in character." 481 U.S. at 63-64. Accordingly, complete preemption renders facially state-law based claims removable to federal court. *Id.* at 66.

The analytical framework for complete ERISA preemption was provided by the Supreme Court in *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004). In order to determine

3

whether an asserted state-law cause of action comes within the scope of ERISA's complete preemption provision, *Davila* devised a two-prong test. *Id.* A state-law cause of action is completely preempted if: (1) "an individual at some point in time, could have brought [the] claim" under ERISA section 502(a); and (2) "where there is no other independent legal duty that is implicated by a defendant's actions." *Id.* The test is in the conjunctive, so a state-law cause of action is only completely preempted if both prongs are satisfied.

## II.  Application of the Davila Test

Having established the relevant framework for ERISA preemption, the Court now applies the *Davila* test to the facts of this case in light of Defendants' burden of establishing federal jurisdiction. *See Emrich.*, 846 F.2d at 1195 (on a motion to remand, defendant has the burden of establishing federal jurisdiction).

### A.  Plaintiff could not bring its claims under ERISA's remedial scheme.
#### 1.  Plaintiff is not a fiduciary.

To find complete preemption, the Court must determine that Plaintiff, "at some point in time," could have brought its claims under ERISA § 502(a). *Davila*, 542 U.S. at 210. Before addressing whether the substance of Plaintiff's claims fit within the § 502(a) remedial scheme, it must first be determined whether Plaintiff is an entity that can bring an ERISA claim at all. In this regard, an ERISA action can only be brought in federal court by a participant, beneficiary, or fiduciary of an ERISA plan. *Harris v. Provident Life & Accident Ins. Co.*, 26 F.3d 930, 933 (9th Cir. 1994). Here, the relevant dispute is whether Plaintiff is a "fiduciary," such that it could have brought these claims under § 502(a)(3).[1] Opp'n at 4-7; Reply at 2-4.

---

[1] A civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." ERISA § 502(a)(3).

4

Within the context of ERISA, an entity is a fiduciary with respect to an ERISA plan:

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). The Ninth Circuit "construes ERISA fiduciary status liberally." *Solis v. Webb*, 931 F. Supp. 2d 936, 946 (N.D. Cal. 2012) (quotations and citations omitted). Accordingly, a fiduciary is defined "in *functional* terms of control and authority over the plan." *Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 982 (9th Cir. 1999) (emphasis original). However, where the plaintiff is a Trust Fund, it can only be a plan fiduciary where it is a distinct and separate entity from the ERISA plan. *Id.* An ERISA plan itself does not ordinarily have standing to sue under § 502(a). *Id.* at 983 (citing *Steen v. John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 917 (9th Cir. 1997)).

Defendants argue that Plaintiff is a fiduciary because it exercises discretion over the plan as a result of its responsibility "for the actual payment of its members' medical expenses." Opp'n at 5 (citing *Credit Managers Ass'n of S. California v. Kennesaw Life & Acc. Ins. Co.*, 809 F.2d 617, 625-26 (9th Cir. 1987)). However, Defendants' citation to *Credit Managers Association* is unhelpful, as the case is factually distinguishable. In that case, the Ninth Circuit found that a "master trust" could be a fiduciary to *separate* individual employer ERISA plans where it "collected and disposed of plan premiums and arranged for the payment of claims." 809 F.2d at 625-26. Conversely, Plaintiff in our case is both a trust fund and the ERISA plan itself, and is suing on its own behalf. *See* 29 U.S.C. § 1002(1), (2) (providing that employee benefit plan governed by ERISA can be a "fund"). Unlike the master trust fund in *Credit Managers Association*, Plaintiff is not a *distinct* entity operating in a discretionary capacity toward a *separate* ERISA plan. Insofar as Plaintiff includes administrators that must act on behalf of the plan's administration, the

5

1   Ninth Circuit has expressly rejected this as a basis for assigning a trust fund fiduciary
2   status under ERISA. *See Local 159, 342, 343 & 444*, 185 F.3d at 983. It therefore cannot
3   be enough to make Plaintiff a fiduciary merely because it includes administrators that issue
4   the "actual payment of its members' medical expenses," as contended by Defendants.
5   Opp'n at 5.

6   Defendants additionally argue that Plaintiff is a fiduciary because the Plan
7   Document allegedly allows Plaintiff certain discretionary authority over coverage
8   determinations when patients are incapacitated or in a coma, as well as the authority to
9   decide whether new technologies are covered. *Id.* (citing Ex. 1 to Bailey Decl. at 105
10  ("Plan Document') (Docket No. 18-2)). However, the same page of the Plan Document
11  cited by Defendants also expressly provides: "The Board of Trustees of the Trust Fund is
12  the named fiduciary with the authority to control and manage the operation and
13  administration of the Trust Fund." Plan Document at 105. Consequently, to the extent the
14  Plan Document provides for discretionary control, it is the Trust Fund's *Board of Trustees*
15  exercising that control, not the Trust Fund itself.

16  Finally, Defendants take issue with Plaintiff's contextual argument that it is not a
17  fiduciary in this case because it is not acting in a fiduciary capacity when it brings this
18  lawsuit, regardless of its potential classification as a fiduciary in other contexts. Mot. at 6-
19  8. Defendants refer to this argument as Plaintiff's "own formulation," and assert,
20  correctly, that the Ninth Circuit has never adopted this approach. Opp'n at 5-6. However,
21  the Court does not need to address the validity of this pro-Plaintiff contextual approach, as
22  even under Defendants' preferred framework Plaintiff cannot rightly be considered a
23  fiduciary. Because Plaintiff is not a fiduciary, it could not have brought its claims under
24  ERISA § 502(a)(3), and Prong One of *Davila* is not satisfied.
25  ///
26  ///
27  ///
28  ///

> **2. Even if Plaintiff were a fiduciary, Defendants have not met their burden of demonstrating how these claims could be brought under ERISA § 502(a)(3).**

Only actions seeking to enforce or cure the violation of provisions of the ERISA plan or the statute can be brought under ERISA § 502(a)(3). *See* 29 U.S.C. § 1132(a)(3); *U.S. Airways, Inc. v. McCutchen*, 133 S.Ct. 1537, 1548 (2013) ("The section under which this suit is brought does not, after all, authorize 'appropriate equitable relief' at large; rather, it countenances only such relief as will enforce 'the terms of the plan' or the statute, § 1132(a)(3) (emphasis added).") (internal citations and quotation marks omitted). Consequently, where an action brought by a fiduciary does not seek to enforce or cure violations of a plan provision or a provision of ERISA, it cannot be completely preempted.

Defendants fail to explain how Plaintiff's Complaint could be construed to allege the violation of any provision of the ERISA plan or the ERISA statute, and it is not the Court's burden to make such arguments on Defendants' behalf. *See Emrich.*, 846 F.2d at 1195 (providing that the removing party has the burden of establishing federal jurisdiction). While such a provision might exist, the Court declines to scour the ERISA Plan Document and ERISA statute in search of a provision that Plaintiff might possibly claim has been violated. Accordingly, the Court finds that ERISA's remedial scheme would be unavailable to Plaintiff even if it were a fiduciary. Because Defendants have failed to meet their burden of demonstrating that Plaintiff could have brought its claims under ERISA § 502(a)(3), this case should be remanded on this basis alone.

> **B. Plaintiff's claims seek to remedy a violation of a legal duty independent of ERISA.**

Even if Plaintiff were a fiduciary that could bring its claims under § 502(a)(3), Defendants must additionally demonstrate that there is no independent legal basis for Plaintiff's state law claim, as required by *Davila* Prong Two. *Davila*, 542 U.S. at 210 (there must be "no other independent legal duty . . . implicated by a defendant's actions"). Defendants contend that no independent legal duty is implicated because Plaintiff's UCL claims are dependent on the existence of the ERISA plan. Opp'n at 7. In other words,

1   Defendants argue that Plaintiff's claims are preempted because absent the obligation of
2   payment created by the ERISA plan, Plaintiff could not have overpaid and its claims
3   would not exist. *Id.* at 7-8. The Court disagrees with this application of the law.
4       In support of this argument, Defendants first cite to *Sender v. Franklin Res., Inc.*,
5   No. 11-3828-EMC, 2011 WL 5006460, at \*6 (N.D. Cal. Oct. 20, 2011), for the contention
6   that "[a]n independent legal duty will not arise where the defendant's actions are
7   'dependent on the existence of the ERISA plan.'" Opp'n at 7. Defendants take this
8   statement out of context. The complete quote from *Sender* is: "Here, although Plaintiff's
9   claim is not dependent on interpreting the terms of the ERISA plan, it is dependent on the
10  existence of the ERISA plan and required distribution of benefits from that plan." *Sender*,
11  2011 WL 5006460, at \*6 (emphasis added). This full quote reveals Defendants' mistake.
12  The operative question is not whether a *defendant's actions* are dependent on the plan, as
13  Defendants assert, but whether *Plaintiff's claims* are dependent on the plan. *Compare id.*
14  *with* Opp'n at 7. In *Sender*, the plaintiff's claim was dependent on the existence of the
15  ERISA plan because it was the plan that entitled the plaintiff to the distribution of benefits
16  he sought in the lawsuit. In our case, Plaintiff is not seeking the recovery of unpaid
17  benefits based on an obligation of Defendants that originated solely from an ERISA plan;
18  Plaintiff is seeking restitution for alleged overpayments that resulted from business
19  practices prohibited by state law. Finally, read in context, the *Sender* court was
20  distinguishing between claims disputing the terms/requirements of a plan and claims for
21  benefits owed under the plan, finding that both trigger ERISA preemption. *See id.* The
22  present case does not fall under either of those categories.
23      In further support, Defendants next cite to *Yamauchi v. Cotterman*, which states:
24  "State law claims that necessarily depend on the existence of an ERISA plan are
25  preempted." No. 14-1378-EMC, 2015 WL 1346885, at \*4 (N.D. Cal. Mar. 24, 2015).
26  However, *Yamauchi* articulated this rule in addressing the plaintiff's claim that a defendant
27  "breached his fiduciary duties as Trustee and Plan administrator regarding transfer and
28  collection of certain Plan assets." *Id.* Because the defendant's duty arose from the ERISA

plan, and because the claim addressed the allocation of plan assets, the claim in that case was inextricably intertwined with the ERISA plan. That is not the case here. Plaintiff in our case is alleging that Defendants violated a state-law duty to engage in fair and legal business practices. The duty and Defendants' alleged breach exist regardless of the plan's terms or provisions. Indeed, Defendants had the obligation to behave fairly and legally under California's Unfair Competition Law regardless of whether the plan existed at all.

Defendants next cite to *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 930 (C.D. Cal. 2012), which dealt with the recovery of unpaid benefits. Opp'n at 7. The recovery of unpaid benefits is substantively distinguishable from the present case, which alleges fraudulently induced overpayments. While a claim for benefits guaranteed by the terms of an ERISA plan naturally relies on the application of the plan's provisions, a claim for overpayment does not. *In re WellPoint* is therefore inapposite.

Defendants draw the core of the support for their argument on Prong Two of *Davila* from a group of out-of-circuit decisions that found overpayment claims preempted by ERISA. Opp'n at 7 (citing *Aflac, Inc. v. Bloom*, 948 F. Supp. 2d 1374, 1377-78 (M.D. Ga. 2013); *Blue Cross & Blue Shield of R.I. v. Korsen*, 746 F. Supp. 2d 375, 382-84 (D.R.I. 2010)). However, the precedential value of these out-of-circuit cases is minimal. Additionally, these decisions conflict with cases from other courts that have found just the opposite. *See*, *e.g.*, *United Healthcare Servs., Inc. v. Sanctuary Surgical Ctr., Inc.*, 5 F. Supp. 3d 1350 (S.D. Fla. 2014); *Aetna Health, Inc. v. Health Goals Chiropractic Center, Inc.*, No. 10-5216-NLH, 2011 WL 1343047, at *4-5 (D.N.J. Apr. 7, 2011); *Aetna Health, Inc. v. Srinivasan, M.D.*, No. 10-4858-FSH, 2010 WL 5392697, at *3 (D.N.J. Dec. 22, 2010)). Consequently, where the Court is confronted with persuasive authority on both sides of this dispute, it chooses to join the courts that have found similar overpayment claims to be based on an independent legal duty, as the cases cited by Defendants impermissibly expand the scope of ERISA preemption in a manner that encroaches upon the jurisdiction of state courts and denies plaintiffs their lawful and effective remedy.

Prudential concerns aside, the cases cited by Defendants conflict with precedent that is binding upon this Court. While it is true that Plaintiff's payments to Defendants were made within the context of an ERISA plan, this does not result in complete preemption because it neither forecloses the existence of an independent legal duty nor provides Plaintiff with an opportunity for relief under ERISA's remedial scheme. The Ninth Circuit has rejected similar attempts to apply ERISA preemption to overly attenuated claims, holding that "[i]t is not enough for complete preemption that the contract and tort claims 'relate to' the underlying ERISA plan." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 949 (9th Cir. 2009). The Ninth Circuit has also held that it is not enough that an ERISA plan might be consulted in the course of the litigation. *Blue Cross of California v. Anesthesia Care Associates Med. Grp., Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999) ("the bare fact that the Plan may be consulted in the course of litigating a state-law claim does not require that the claim be extinguished by ERISA's enforcement provision"). Furthermore, at least one court in this circuit has found that where a UCL claim "is not seeking to enforce any provisions of ERISA or terms of the plan" and "does not concern denial of benefits under ERISA or the plan itself," it is based upon an independent legal duty arising under state law. *Clark v. Group Hosp. and Medical Services, Inc.*, No. 10-333-BEN, 2010 WL 5093629, at \*6 (S.D. Cal. Dec. 7, 2010).

Finally, the Court is unmoved by Defendants' reliance on a flawed Seventh Circuit decision that found a claim for overpayment completely preempted under ERISA § 514(a), which, as explained above, appropriately provides only partial preemption. Opp'n at 7 (citing *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Neurobehavioral Assocs. P.A.*, 53 F.3d 172, 174-75 (7th Cir. 1995)). *Central States* provides no guidance to this Court, as it misapplied ERISA preemption and pre-dates several pivotal Supreme Court decisions, including *Davila*.[2]

---

[2] *Central States'* abrogation has been recognized by subsequent cases. *See, e.g., Kolbe & Kolbe Health and Welfare Ben. Plan v. Medical College of Wisc., Inc.*, 690 F. Supp. 2d 778, 782 (W.D. Wisc. 2010).

1    Ultimately, Plaintiff's UCL claims are based on duties that derive from California
2    statute. These duties do not derive from rights and obligations established by the ERISA
3    plan, and the ultimate resolution of these causes of action will not require an interpretation
4    or analysis of the terms or provisions of the ERISA plan.  The question posed by Plaintiff's
5    Complaint is whether Defendants systematically charged Plaintiff for services that were
6    not rendered.  Defendants have failed to show how the ERISA plan would have any
7    bearing on this question.  At bottom, Defendants had a state-law based duty to engage in
8    fair business practices, including refraining from the activity alleged.  "The obligation to
9    meet that duty is not dependent on the terms of any ERISA plan, and arises independently
10   from any contractual duties imposed by ERISA." *Sanctuary Surgical Ctr.*, 5 F. Supp. 3d at
11   1361.  Plaintiff's UCL claims are therefore not preempted under *Davila*'s second prong.
12   *See Davila*, 542 U.S. at 210.

### III. Defendants' Request for Limited Jurisdictional Discovery

As a separate matter, Defendants ask the Court to permit "limited jurisdictional discovery" if the Court finds that "there are open questions as to" Plaintiff's fiduciary status.  Opp'n at 9.  Defendants explain that courts "routinely permit limited discovery to resolve jurisdictional disputes." *Id.* (citing cases).  However, the cases cited by Defendants allowed discovery where it "would be useful," where "pertinent facts bearing on the question of jurisdiction are in dispute," and "where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003); *Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989); *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977).  The Court does not find this to be the case, and seeing no "open questions" denies Defendants' request.

### CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Plaintiff's motion to remand. Plaintiff alleges that Defendants fraudulently charged for services they did not perform.

11

The ERISA plan is irrelevant to a determination of whether Defendants' actions were fraudulent or unfair; Defendants either performed the services or they did not. "The specific terms of the plans are irrelevant in resolving this inquiry." *Aetna Health Inc. v. Health Goals Chiropractic Ctr., Inc.*, No. 10-5216-NLH, 2011 WL 1343047, at *6 (D.N.J. Apr. 7, 2011). As such, this case is not preempted by ERISA § 502(a)(3) and is properly remanded to state court for further adjudication.

**IT IS SO ORDERED.**

Dated:   05/19/15   _____
THELTON E. HENDERSON
United States District Judge